UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| United States of America, | No. 2:19-cr-00134-JAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| Jose Manuel Navarro, | |
| Defendant. | |

The matter before the Court is Defendant Jose Manuel Navarro's Motion to Suppress. Mot. to Suppress ("Mot."), ECF No. 14. For the reasons set forth below, the Court DENIES Defendant's motion.

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In April 2019, the Tri-County Drug Enforcement Team ("TRIDENT") began an undercover operation in Placer and Sacramento Counties. TRIDENT Report, ECF No. 15-1. Over the course of the investigation, an undercover member of the team ("UC") communicated by phone with an unknown man suspected to be connected with a drug trafficking operation in Sinaloa, Mexico. Id. The man told UC he could supply up to 100 pounds of methamphetamines. Id. Ultimately, the man told UC he would send

1

him 65 pounds of methamphetamines. Id. On the morning of May 20, 2019, Defendant and UC met in the parking lot of a Target in Sacramento. Id. UC asked to see the "product." Id. Defendant told UC that all the product was in a hidden compartment in his vehicle, so he could not show it to him in the parking lot. Id. UC asked Defendant to follow him to a more secure location. Id. As UC drove past Defendant's Ford truck, he noticed the truck had Arizona plates that ended in "91." Id. UC relayed that information to the surveillance team. Id.

Around this time, Officer Sarabia, a California Highway Patrol ("CHP") officer, saw Defendant make an unsafe lane change in violation of Vehicle Code § 26708(a). CHP Report, ECF No. 15-2. Following the lane change, Officer Sarabia also observed Defendant following the vehicle in front of him too closely in violation of Vehicle Code § 21703. Id. As Officer Sarabia approached Defendant's vehicle, he noticed Defendant moving onto the white lines in the road and that Defendant's front windows were tinted in violation of Vehicle Code § 26708(a). Id. Officer Sarabia pulled Defendant over for these violations. Id.

Officer Sarabia approached Defendant's truck, requested his license, and asked him a series of traffic-related questions. Id. Officer Sarabia also asked Defendant where he was coming from and where he was going. Id. Defendant first said he was visiting his son on Madison Avenue, but then changed his answer, claiming he was going to visit family in Reno. Id. Based on these inconsistencies, Officer Sarabia asked Defendant to exit his truck and walk over to the patrol car. Id.

As Defendant exited his truck, Sergeant Powell arrived at

2

the scene. Id. Sergeant Powell ran a records check on Defendant while Officer Sarabia asked Defendant if he had anything illegal inside his vehicle. Id. After Defendant denied having any contraband, Officer Sarabia asked Defendant if he could search his truck. Id. Defendant signed the Spanish consent form Officer Sarabia provided. Id. Officer Sarabia and his narcotics-detection dog walked around Defendant's vehicle. Id. The dog alerted to several areas around and in the truck. Id. Officer Sarabia then searched the vehicle and discovered several cellophane-wrapped packages behind the rear seats. Id. Officer Sarabia placed Defendant in handcuffs and contacted the TRIDENT team for assistance. Id.

Upon arrival, members of the team field tested one of the packages. Id. The package tested positive for methamphetamine. Id. Officers took the packages—68 in total—to the TRIDENT facility to be processed. Id. Defendant was placed under arrest. Id.

## II. OPINION

Defendant moves to suppress evidence obtained as a result of Officer Sarabia's seizure and subsequent search. Defendant contends the search and seizure were unlawful because Officer Sarabia (1) did not have reasonable suspicion to pull him over and (2) impermissibly prolonged the traffic stop. Mot. at 2-3. The Government argues that the investigatory stop was supported by reasonable suspicion, the stop was not unreasonably prolonged, and Defendant consented to a search of his vehicle. USA's Opp'n to Mot. to Suppress ("Opp'n") at 1, ECF No. 15. The Government

further argues the TRIDENT investigation supplied probable cause for the stop. Id.

    A.    The Traffic Stop

        1.    Legal Standard

The Fourth Amendment to the Constitution prohibits "unreasonable searches and seizures" by the Government. United States v. Arvizu, 534 U.S. 266, 273 (2002). Those protections extend to an investigatory stop of a vehicle "because stopping an automobile and detaining its occupants constitutes a seizure . . . even though the purpose of the stop is limited and the resulting detention quite brief." United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006) (citations omitted). Investigatory traffic stops are akin to the on-the-street encounters addressed in Terry v. Ohio, 392 U.S. 1 (1968). Id. Accordingly, the same objective standard applies. Id. "[A] police officer may conduct an investigatory traffic stop if the officer has reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime." Id. (internal quotation marks and citation omitted).

A traffic violation alone is sufficient to establish reasonable suspicion." Choudhry, 461 F.3d at 1100 (citations omitted). In other words, when an officer has probable cause to believe a traffic violation has occurred, a stop of the vehicle is reasonable. Id. (citing Whren v. United States, 517 U.S. 806, 810 (1996)).

        2.    Analysis

Officer Sarabia had reasonable suspicion to stop Defendant for violating California's traffic laws. Officer Sarabia claims

4

he observed Defendant commit four separate traffic violations. CHP Report at 3. Observing any one of these violations would have given Officer Sarabia the reasonable suspicion necessary to stop Defendant's vehicle. Whren, 517 U.S. at 810 ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (emphasis added).

The aerial surveillance video of Defendant's driving on the day in question does not persuade the Court that he made an unsafe lane change or followed the vehicle in front of him too closely. See Aerial Footage Screenshot, ECF No. 15-4. But it is clear Defendant traveled over the solid white lines in the road. See MVARS Footage Screenshot, ECF No. 15-5. Moreover, Defendant does not contend that Officer Sarabia lacked probable cause to believe the truck's windows were unlawfully tinted. Mot. at 8. He simply contends the degree of tint on his windows was, in fact, lawful. Id. Officer Sarabia's belief that Defendant was committing either of these traffic violations justified the subsequent traffic stop. Choudhry, 461 F.3d at 1100. Officer Sarabia's initial seizure of Defendant was lawful.

B. The Length of the Stop

1. Legal Standard

"A seizure for a traffic violation justifies a police investigation of that violation." Rodriguez v. United States, 575 U.S. 348, 354 (2015). But a seizure and investigation that is initially lawful may nonetheless become unlawful if it is unreasonably prolonged. Id. at 350-51 (citation omitted). The

tolerable duration of an investigatory stop is determined by the seizure's purpose. Id. at 354 (citations omitted). Within the traffic-stop context, the mission of the seizure is "to address the traffic violation that warranted the stop and attend to related safety concerns." Id. "Beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to [the traffic] stop." Id. at 355 (internal quotation marks and citation omitted). These inquiries include: checking the driver's license, determining whether there are outstanding warrants, and inspecting the vehicle's registration and proof of insurance. Id. The stop may last no longer than is necessary to effectuate its purpose. Illinois v. Caballes, 543 U.S. 405, 407 (2005).

During the time it takes to investigate the traffic infraction, an officer may also conduct certain unrelated checks. Rodriguez, 575 U.S. at 355. For instance, use of a narcotics-detection dog—one that only reveals the possession of contraband—is permissible. Caballes, 543 U.S. at 409. However, its use may not prolong the traffic stop "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Rodriguez, 575 U.S. at 355.

2. Analysis

Officer Sarabia did not unlawfully prolong the traffic stop. Officer Sarabia observed Defendant's traffic violations at about 10:15 am. CHP Report at 3. He pulled Defendant over shortly thereafter. While Officer Sarabia asked Defendant routine traffic-related questions, Sergeant Powell arrived on the scene. Id. at 4. Officer Sarabia asked Sergeant Powell to

run a records check on Defendant. Id. A records check is routine incident to a traffic stop. Rodriguez, 575 U.S. at 355. Officer Sarabia asked Defendant whether he could search Defendant's vehicle while Sergeant Powell conducted that check. CHP Report at 5. Defendant consented to the search. See Spanish Consent Form, ECF No. 15-2. Officer Sarabia conducted the search, found contraband, and arrested Defendant by 10:35 am—only twenty minutes after the initial traffic violations. CHP Report at 5-6.

As the Government argues in its Opposition, the facts here are akin to those of Caballes. See Opp'n at 7 (citing Caballes, 543 U.S. at 406). In Caballes, a state trooper pulled the defendant over for speeding. 543 U.S. at 406. While the trooper was writing a warning ticket, a second trooper arrived and walked his narcotics-detection dog around the defendant's vehicle. Id. The dog alerted at the trunk, the troopers searched it, and the Defendant was arrested. Id. The encounter lasted less than 10 minutes. Id. As in Caballes, Officer Sarabia walked his dog around Defendant's vehicle while Sergeant Powell ran a routine records check. The officers were still conducting the traffic stop when the dog sniff occurred. Unlike Rodriguez, the dog sniff did not occur after the traffic stop was over. 575 U.S. 348 at 352 (finding a dog sniff test impermissibly prolonged the traffic stop because it occurred eight minutes after the officers fully addressed the traffic violation and issued a written warning).

In sum, Officer Sarabia had the reasonable suspicion necessary to pull Defendant over. The undisputed facts reveal

that the dog sniff occurred while the officers were conducting a routine traffic investigation. Only about six minutes passed from the time when Officer Sarabia activated his sirens to the time Defendant signed the written consent form allowing officers to search his vehicle. The dog sniff occurred immediately after the Defendant consented to the search and only lasted about two minutes before the first positive alert. At no point did the Defendant revoke his consent. The stop was, thus, not unlawfully prolonged. And, once the dog alerted, Officer Sarabia had independent probable cause that justified further investigation.

### III. ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Suppress.

IT IS SO ORDERED.

Dated: January 8, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE